UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**     **(IN CHAMBERS): Order Dismissing Action Without Prejudice**

## I.     FACTUAL AND PROCEDURAL HISTORY

This action arises out of a dispute that has lasted more than a decade. It has spawned numerous administrative, state, and federal court proceedings directed to the question of whether the members of Congregation Etz Chaim may conduct religious services at a house located at 303 South Highland Avenue ("the Highland property") in Los Angeles, California ("the City").

### A.     The Commencement and Settlement of This Action

The Highland property is located in an area that is zoned R-1 (primarily residential) pursuant to Los Angeles Municipal Code § 12.08. As a result, Congregation Etz Chaim applied to the City for a conditional use permit ("CUP") to operate a house of prayer at the Highland property. On October 16, 1996, the City's Zoning Administrator denied this application. The Zoning Administrator's decision was upheld by the Board of Zoning Appeals and sustained by the Los Angeles City Council.

On July 10, 1997, Congregation Etz Chaim and the individual members thereof (collectively, "the Congregation") commenced this action against the City, alleging that the City's denial of its application for a CUP violated federal and state law.[1] Following

---

[1] In June 1998, while this action was pending, the Congregation filed an action in the Los Angeles County Superior Court ("the Superior Court") for a writ of mandate, seeking to overturn the City's denial of the CUP. See Congregation Etz Chaim v. City of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$\mathop{JS\text{-}6}\limits^{O}$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

the enactment of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA"), the Congregation filed a second amended complaint, alleging that, in addition to its other claims for relief, the City's actions violated RLUIPA.[2]  In an order dated November 27, 2000, this Court, the Hon. Harry L. Hupp,

_____

<u>Los Angeles</u>, Los Angeles Superior Court Case No. BC192517.  The Superior Court upheld the City's denial of the CUP.  <u>Id.</u>   On December 3, 1999, the California Court of Appeal affirmed.

[2] RLUIPA provides, in pertinent part, as follows:

(a)     Substantial burdens.
(1)     No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution --
(A) is in furtherance of a compelling governmental interest; and
(B) is the least restrictive means of furthering that compelling governmental interest.
(2)     This subsection applies in any case in which --
. . .
(C) the substantial burden  is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

(b)     Discrimination and exclusion.
(1)     Equal terms. No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
(2)     Nondiscrimination. No government shall impose or implement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

presiding, concluded that "[a]ll of the issues raised by [the Congregation] in its original complaint have been decided against it in [parallel] state court proceedings . . . [and] the doctrine of issue preclusion prevents their relitigation in this court."[3] November 27, 2000 Order at 2. However, this Court denied the City's motion for summary judgment as to the RLUIPA claim on the ground that "the state proceedings did not determine all of the issues relevant under [RUILPA]; thus there are triable issues of fact [remaining]." Id.

On September 27, 2001, the Congregation and the City entered into a written settlement agreement ("the Settlement Agreement") resolving this action. Subsequently, on February 1, 2002, the Court entered a Notice of Dismissal and Order ("the Dismissal Order") dismissing this case with prejudice pursuant to the terms of the Settlement Agreement. The Dismissal Order specifically acknowledges the Settlement Agreement, which was attached to the Order, and provides that "as set forth in Section XIV of the Settlement Agreement attached hereto, the Court retains jurisdiction over both the subject matter of, and the parties to this action for the purposes of issuing further orders or directions as may be necessary or appropriate to construe, implement, modify, enforce, terminate or reinstate the terms of that Settlement Agreement or for any further relief as the interest of justice may require." Dismissal Order at 1. The Dismissal Order further provides that the Court shall retain such continuing jurisdiction for five years. Id. at 2. On September 6, 2006, pursuant to a joint stipulation of the parties, the Court entered an order extending its jurisdiction over this action for an additional five years, until February 1, 2012.

---

a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination. Exclusions and limits. No government shall impose or implement a land use regulation that --
(A) totally excludes religious assemblies from a jurisdiction; or
(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

42 U.S.C. § 2000cc.

[3] On April 14, 2005, this action was reassigned to the Hon. Christina A. Snyder by the Chief Judge of this Court as a related action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

The Settlement Agreement provides that religious worship may take place at the Highland property subject to certain conditions. These conditions include restrictions on the time of day religious services or gatherings may be conducted, the number of people gathering for religious services, the number of automobiles driven to the Highland property by members of the Congregation, the location where such automobiles may be parked, and the types of activities that may be conducted on the Highland property. Dismissal Order, Ex. A (Settlement Agreement) § VI.

## B.     The League of Residential Neighborhood Advocates Action

On July 10, 2003, the League of Residential Neighborhood Advocates and individual Hancock Park homeowners, none of whom were parties to this action, filed a complaint in this Court against Congregation Etz Chaim, the Rubin Family Exemption Trust, the City, then Mayor James Hahn, and City Attorney Rockard Delgadillo. League of Residential Neighborhood Advocates v. City of Los Angeles, CV 03-4890 CAS (Ex) ("the LRNA action"). The plaintiffs in the LRNA action ("the LRNA plaintiffs") sought (1) a declaration that the Settlement Agreement is invalid under federal and state law and (2) an injunction prohibiting use of the Highland property as a place for religious worship on the grounds that such use does not conform to applicable zoning laws and violates various provisions of the California and United States Constitutions. In an order dated September 15, 2003, the Court granted a motion by defendants Congregation Etz Chaim and the Rubin Family Exemption Trust to dismiss plaintiffs' complaint with leave to amend. The Court stated that "[t]he complaint should be amended to allege the real question at issue, which is whether plaintiffs have standing to collaterally attack the settlement reached in the previous action, including whether the City had the power to settle the challenges posed to it in the previous action." Plaintiffs filed their first amended complaint on October 9, 2003, against Congregation Etz Chaim, Mayor James Hahn, and City Attorney Rockard Delgadillo ("the City defendants"). On December 22, 2003, the Court granted Congregation Etz Chaim's motion to dismiss the first amended complaint with prejudice. The Court stated in relevant part that:

> One basic and fundamental assumption underlies claims 1 through 9. The assumption is that the settlement agreement granted Congregation [Etz Chaim] a CUP without going through the procedures required by the ordinances of City and California statutory law before a CUP was granted. Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O
JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

> argues that the right of nearby residents to take part in the
> hearing process on the application for a CUP is a property right
> which cannot be evaded without violating the Due Process
> Clause and other constitutional provisions. The defect in
> plaintiff's argument is that the premise is wrong. The
> settlement agreement did not create a CUP. It was reached on a
> compromise basis with Congregation and City each giving up
> certain strongly held positions to obtain a settlement . . . The
> City Charter, § 273(c), expressly allows City to settle litigation
> against it. This settlement agreement was negotiated
> thoroughly before Magistrate Judge Eick, was submitted to the
> City Council after final approval by the attorneys, was
> considered twice by the City Council, and approved.

See December 22, 2003 Order at 5-6. The Court concluded that "the settlement agreement does not create a CUP within the meaning of the zoning acts," and therefore "all of the deficiencies alleged against it fail." December 22, 2003 Order at 6-7. The City defendants filed a motion for judgment on the pleadings on March 5, 2004. On April 22, 2004, the Court granted their motion with leave to amend, concluding that the "law of the case established by the December 22, 2003 Order [bars] any claim predicated on the theory that the Settlement Agreement is a de facto CUP." See April 22, 2004 Order at 8. Plaintiffs filed their second amended complaint on May 6, 2004, raising the same claims as those raised in their first amended complaint. However, rather than alleging that the Settlement Agreement was a "de facto CUP," plaintiffs alleged in the second amended complaint that the City granted plaintiffs "a contractual CUP or non-statutory contractual use permission." See, e.g., Second Amended Compl. in LRNA action ¶ 47.

On July 13, 2004, the Court granted with prejudice the City defendants' motion to dismiss the second amended complaint. The Court held that because the Settlement Agreement was neither a CUP or a "de facto CUP," by entering the Settlement Agreement, the City had not violated the Los Angeles Municipal Code or the California Government Code provisions governing the issuance of a CUP or the procedures for settling municipal litigation. The Court also rejected the LRNA plaintiffs' arguments that the Settlement Agreement constituted an impermissible delegation of City authority or that it violated their rights under the Fourteenth Amendment's Due Process or Equal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|----------|---------------------|------|-------------|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

Protection clauses or the First Amendment's Establishment clause.

The LRNA plaintiffs thereafter appealed the Court's December 13, 2003 and July 13, 2004 orders. On May 13, 2006, the Ninth Circuit remanded the LRNA action to this Court for reconsideration of the July 13, 2004 order in light of the California Court of Appeals' decision in Trancas v. City of Malibu, 138 Cal. App. 4th 172 (2006). In Trancas, the court invalidated a city's decision to settle a lawsuit by granting the functional equivalent of a zoning variance without complying with statutory zoning procedures. Id. at 181-82. On August 14, 2006, based on the Court's conclusion in its earlier orders that the Settlement Agreement was not de facto CUP, the Court distinguished Trancas, and affirmed its July 13, 2004 order granting the City defendants' motion to dismiss the second amended complaint.

The LRNA plaintiffs appealed again, and on August 21, 2007, the Ninth Circuit reversed. League of Residential Neighborhood Advocates v. City of Los Angeles, 498 F.3d 1052 (9th Cir. 2007) ("LRNA"). The court pointed out that pursuant to Los Angeles Municipal Code §§ 12.08(A) and 12.24(T)(3)(b), the operation of a "house of worship" in an R-1 district requires the issuance of a conditional use permit, and that before such a permit may be issued, there must be public notice and a hearing, factual findings, and an opportunity for appeal. Id. at 1055-56. The court stated that a federal settlement agreement cannot provide a means for state officials to evade state law. Id. at 1055 (citing Keith v. Volpe, 118 F.3d 1386, 1393 (9th Cir. 1997) (holding that state officials "could not agree to terms which would exceed their authority and supplant state law")). Thus, a municipality cannot waive or consent to a violation of its zoning laws, and any agreement by the municipality to circumvent its zoning laws is "invalid and unenforceable." Id. at 1056. Because the Settlement Agreement allowed the Congregation to engage in congregational worship -- a "conditional use" under the Los Angeles Municipal Code -- without obtaining a CUP, the court held that the Settlement Agreement was invalid and unenforceable under California law. Id. at 1056-57.

The court went on to state, however, that the City would not have to comply with its zoning laws if such compliance had led to or would result in a violation of federal law. Id. at 1057-58. Thus, the court held, upon properly supported findings that the Settlement Agreement is *required* to remedy an *actual* violation of federal law, the Settlement Agreement would be enforceable, notwithstanding its conflict with the City's zoning laws. Id. at 1058. But the Court had made no findings that federal law -- in this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

case, RLUIPA -- had been violated or would be violated. In the absence of such findings, the court concluded, because the Settlement Agreement provided for violations of the City's zoning laws, this agreement was invalid and unenforceable. Id.

On April 24, 2009, in light of the Ninth Circuit's decision in this action, the Court entered judgment in favor of plaintiffs and against defendants, finding the settlement agreement between defendants to be invalid and unenforceable under California law.

## C.    The Younises' State Court Action

On September 24, 2004, Esma Younis and Michelle Younis (collectively, "the Younises"), who live at 303 S. Highland Avenue, next door to the Highland property, filed an action in the Superior Court, alleging that the Congregation's use of the Highland Property constitutes a public and private nuisance. The Younises seek damages and an injunction prohibiting the Congregation from holding religious services and gatherings on the Highland property. Complaint in Los Angeles County Superior Court Case No. BC322062 ("the Younis Compl.") ¶ 1 at 10, ¶ 1 at 11. The Younises allege that the Congregation's operation of a house of religious worship in violation of the City's R-1 use restrictions constitutes a public nuisance. Id. ¶¶ 7, 22. The Younises also allege that the Congregation's activities on the Highland property cause an unreasonable level of noise, dangerous parking conditions, and deprivations of their rights of privacy, and have lessened the value of their home. Id. ¶¶ 16-21.

On March 28, 2005, the Congregation filed a motion in this action to enforce the Settlement Agreement and to enjoin the continued prosecution of the Younises' Superior Court action. On July 5, 2005, the Court granted the Congregation's motion, thereby enjoining the Younises from further prosecution of their lawsuit in the Superior Court. The Court stated that its order was "without prejudice to whatever rights the Younises may have to seek relief against the Congregation in this Court with respect to any matters relating to the Settlement Agreement, including the use of the Highland property." July 5, 2005 Order at 11.

On August 21, 2007, the Ninth Circuit vacated the Court's injunction in light of its opinion reversing the Court's dismissal of the LRNA action. Congregation Etz Chaim v. Younis, 235 Fed. Appx. 626 (9th Cir. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

On May 5, 2008, the Younises filed a motion for preliminary injunction in their state court action to enjoin the Congregation from conducting religious services or otherwise operating a house of worship at the Highland property. On October 27, 2008, the state court granted the Younises' preliminary injunction claim against the Congregation and trial was set for May 19, 2009.

**D.     Present Proceedings**

On May 28, 2008, the Congregation filed a new application for a CUP with the City.

On June 19, 2008, the Congregation filed a motion to enjoin further proceedings in the Younises' state court action. On July 21, 2008, the Court denied the Congregation's motion.

On January 12, 2009, this Court issued an Order to Show Cause regarding dismissal. On February 12, 2009, the Younises, the Congregation, and the City all filed briefs in response to the order to show cause.[4] On February 27, 2009, the Younises, the

---

[4] Plaintiffs argue that the Younises should not be considered as *amicus curiae* in this Court, because the Younises are litigants in a subsequently-filed state court action and the primary opponents against the Congregation in its pending CUP application. Opp'n to Younises' at 3.  The Congregations argue that "the Younises have no legally cognizable interest in challenging the ripeness of the Congregation's first-filed RLUIPA claims – other than to bar the Congregation's federal defenses and gain a procedural advantage in their own state court action."  Opp'n to Younises' Br. at 3.

"There are no strict prerequisites that must be established prior to qualifying for amicus status" although an individual or organization seeking to participate as *amicus curiae* must "make a showing that his participation is useful to or otherwise desirable to the court."  <u>Infineon Techs. N. Am. Corp. v. Mosaid Techs., Inc.</u> 2006 U.S. Dist. LEXIS 81506 (N.D. Cal. 2006); <u>see also</u> <u>Strougo v. Scudder</u>, 1997 WL 473566 * 3 (S.D.N.Y. 1997) (federal courts have broad discretion to permit participation as *amicus curiae* "where such participation will not prejudice any party and may be of assistance to the court.").  The Court finds the Younises amicus brief to be useful to the Court, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|----------|---------------------|------|-------------|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

Congregation, and the City all filed response briefs.  After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II.   DISCUSSION

The Congregation argues that the Court correctly acknowledged in its July 21, 2008 order that the dismissal order in the instant action must be set aside to the extent that the Ninth Circuit has invalidated the settlement agreement.  See July 21, 2008 order at 11.  The Congregation notes that "[t]his Court expressly concluded  prior to settlement there were genuine issues of material fact concerning whether the City's demand for and refusal to grant a CUP constitutes a 'substantial burden' on religion in violation of RLUIPA, and set the matter for trial."[5]  Therefore, the Congregation argues, "the Court should treat the Dismissal Order as if it had not been entered, restore the parties to the status quo ante, and reinstate the RLUIPA action to its docket."  Congregation's Br. at 8.

The City and the Younises, however, argue that the instant action must be dismissed because (1) the current controversy is not ripe and (2) issue preclusion bars the Congregation's claim.

### A.    Ripeness

The City and the Younises argue that because the Congregation currently has a second CUP application pending with the City, the Congregation's RLUIPA claim is not ripe for adjudication.  See Guastay Christian Fellowship v. County of San Diego, 2008 U.S. Dist. LEXIS 93872 (S.D. Cal. 2008) ("Ripeness applies to claims under RLUIPA . . .").  If the City grants the pending CUP application, the City and the Younises argue, the

---

therefore considers it herein.

[5] In its November 28, 2000 order, the Court determined that RLUIPA, which was passed in 2000, applies retroactively to the findings upon which the City denied the Congregation's 1996 CUP application.  See November 28, 2000 Order ("[w]here [as here] the relief requested is prospective only . . . the rule is that the statute applies to cases pending on its effective date. . . Accordingly, [RLUIPA] applies to this court's consideration of the case").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

instant action will be rendered moot.  Furthermore, the City and the Younises argue, the Congregation will suffer no injury if the Court does not act immediately, because the City has to date shown no sign of enforcing its zoning restrictions against the Congregation.

Like standing, the ripeness doctrine has both prudential and constitutional components.  See Alaska Right to Life v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007).  Both the City and the Younises contend that the instant action is not prudentially ripe.

## 1.      Prudential Ripeness

The prudential aspect of ripeness is generally considered in a two prong test: 1) the fitness of the issues for judicial decision and 2) the hardship on the parties of withholding court consideration. Manufactured Home Communities, Inc. v. MHC Operating Limited Partnership, 420 F.3d 1022, 1033 (9th Cir. 2005); Alaska Right to Life Political Action Committee (ARLPAC) v. Feldman, 504 F.3d 840, 849 (9th Cir. 2007).

### a.      Fitness for Judicial Decision

The City and the Younises both analogize to a recent Second Circuit decision – Murphy v. New Milford Zoning Commission, 402 F.3d 342, 347 (2d Cir. 2005) – to support their argument that the Congregation's RLUIPA claim is not fit for judicial decision.  In Murphy, plaintiffs sued the local zoning enforcement commission after the commission ordered plaintiffs to cease holding Sunday religious gatherings at their home. 403 F.3d at 345.  Plaintiffs did not appeal the order to the zoning board or seek a variance before filing the suit.  Id.  In finding that the action was not ripe, the Murphy court described the United States Supreme Court holding in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), a case involving ripeness of a takings suit:

> [In Williamson County,] the Court held that before commencing its takings suit the developer was required to obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations. Since labeled 'prong-one ripeness,' this jurisdictional prerequisite conditions federal review on a property owner submitting at least one meaningful application for a variance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|----------|---------------------|------|-------------|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

Id. at 348 (citations omitted).  The Murphy court then explained the rationale for prong-one ripeness:

> four considerations, all of which motivate our decision today, undergird prong-one ripeness. First, . . . the Williamson County Court reasoned that requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record.  Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel. Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible.  Finally, since Williamson County, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

Id.

The Murphy court then held that the prong one ripeness test applied to plaintiff's RLUIPA claims, stating, "[w]e recognize that the Supreme Court developed the Williamson County ripeness test in the context of a regulatory takings challenge. Nevertheless, it has not been so strictly confined."  Id. at 349-50, citing Taylor Investment Ltd. v. Upper Darby Township, 983 F.2d 1285,1292 (3d Cir. 1993) (applying Williamson County finality rule to substantive due process, procedural due process and equal protection challenges to a zoning decision); Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496, 1507 (9th Cir. 1990) (same).  However, the Murphy court also stated "we remain mindful that Williamson County should be cautiously applied to [RLUIPA] claims."  Id. at 350-51 citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2nd Cir. 2005) (noting that for First Amendment claims, 'the ripeness doctrine is somewhat relaxed'").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

Applying the ripeness test, the Court considered both whether the plaintiff had experienced immediate injury as a result of the defendant's actions and whether requiring plaintiff to pursue administrative remedies would further define the alleged injuries.  Id. Applying these factors, the Court determined that the zoning and enforcement commission's cease and desist order was not inflicting any immediate injury on plaintiff and that an appeal to the Zoning Board would have clarified many of the issues before the Court.   Therefore, the Court found that "it is appropriate to apply Williamson County's prong-one finality requirement to each of [plaintiff's] claims" and held that the Court lacked jurisdiction to hear the suit.

Like the Murphy court, other courts have declined to hear RLUIPA claims on ripeness grounds, and particularly on the ground that the issues were not fit for judicial decision.  See, e.g., Guatay Christian Fellowship v. County of San Diego, 2008 U.S. Dist. LEXIS 93872 *12 (S.D. Cal. 2008) (holding that Church's claim that a San Diego County cease and desist order preventing Church from using a recreation center violated RLUIPA was not ripe, because plaintiff failed to seek re-zoning application or Master Use Permit); Congregation Anshei Roosevelt v. Planning and Zoning Board of the Borough of Roosevelt, 2008 U.S. Dist. LEXIS 63994 (D.NJ 2008) (holding that plaintiff's RLUIPA claims were not ripe, because plaintiff never filed a variance application or received a final determination as to whether a Yeshiva could operate at plaintiff's synagogue).

The City argues that the holding in Murphy compels a finding that the Congregation's claim is not ripe.  Specifically, the City argues that because the Congregation did not present – and indeed, could not have presented – its RLUIPA claim to the City at the time it applied for a CUP in 1996, plaintiff's RLUIPA claim is not ripe. City Br. at 9.  The City argues that an analysis of the four considerations underlying prong-one ripeness, as laid out in Murphy, supports this view. First, the City contends that because the Congregation was not able to present its RLUIPA claim to the City at the time that it applied for a CUP, there is no record of how the City would have decided the CUP application based on RLUIPA.  City's Br. at 9.  Second, since the Congregation currently has a new CUP application pending based in part on RLUIPA, it is unknown what the final outcome of plaintiff's CUP claim will be.  City's Br. at 9. Until the City decides the application, the City argues, the Congregation's injury will not be clearly defined.  Third, the City argues that the City may ultimately approve the second CUP application, thus, obviating the need for judicial entanglement.  City's Br. at 9.  Fourth,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

the City argues that land use disputes are local concerns and should be dealt with by local rather than federal rules.  City's Br. at 9; see also Younises' Br. at 8.

The Congregation responds that the instant case is distinguishable from Murphy because, unlike in Murphy, the Congregation's original CUP application received a final, definitive denial and was subject to full administrative review and appeal.[6]  The Congregation argues that "[n]othing in Murphy suggests that a litigant must expressly invoke in the administrative proceeding the statutory provision that forms the basis of a federal judicial challenge – so long as plaintiff has obtained a final decision concerning the application of the state or local law the federal court claim is ripe." Congregation's Br. at 12.  Furthermore, the Congregation argues that nothing in Murphy suggests that "the mere filing of a second land use entitlement request moots any federal court challenge to the first denial."  Opp'n to Younises' Br. at 8.  Moreover, the Congregation argues that "[n]othing in the [Los Angeles Municipal Code], RLUIPA, or any decisional law requires a federal court litigant to administratively exhaust a particular claim or federal cause of action."  Opp'n to City's Br. at 2. In other words, "[t]he question is whether there was a final administrative denial of the CUP – not whether the federal claims have been administratively exhausted."  Opp'n to City at 3.  In fact, the Congregation argues that nothing in the Los Angeles Municipal Code provides for consideration of RLUIPA or any other federal statute when deciding whether to grant or deny a CUP.  Congregation's Br. at 13, n. 3.

The City responds by noting that the Murphy court held that at the heart of the

---

[6] The Congregation also argues that the Second Circuit's decision in Murphy has no bearing on the case at hand, because Murphy is not a Ninth Circuit case, and that the Ninth Circuit has not applied the Williamson County ripeness test to RLUIPA claims. Congregation's Br. at 11.  However, the Court notes that, in fact, courts within the Ninth Circuit have applied ripeness considerations to RLUIPA claims.  See Guatay Christian Fellowship v. County of San Diego, 2008 U.S. Dist. LEXIS 93872 *12 (S.D. Cal. 2008). Therefore, although not binding, the Court finds the reasoning in Murphy to be instructive, and will consider the reasoning therein with regard to the two prongs of ripeness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

ripeness doctrine "is whether we would benefit form deferring initial review until the claims we were called to consider have arisen in a more concrete and final form." Murphy, 402 F.3d 342, 347 (2d Cir. 2005). The City argues that because the Congregation has submitted a second CUP application on which the City has not yet ruled, there is currently no concrete and final record on the Congregation's quest for a CUP.

### b. Hardship

The Congregation argues that the second factor of prudential ripeness – hardship on the parties of withholding court consideration – weighs in favor of a finding that the Congregation's claim is ripe. Specifically, the Congregation argues that if the Court declines to hear the Congregation's RLUIPA claim, the Congregation will have no remedy for the injury it is suffering as a result of the 1996 CUP denial. Specifically, the Congregation argues that "[c]ompelling the Congregation to wait until the second CUP is decided, appealed and litigated while the state court injunction is obtained and enforced will work an irrevocable hardship on the Congregation . . . In contrast, the City has been aware of the Congregation's position on RLUIPA for a long time 'and has had ample opportunity to take corrective action or change its policies.'" Congregation's Br. at 11; Opp'n to City at 4.

The City responds that the Congregation will experience no hardship if the Court declines jurisdiction on ripeness grounds, because the City has taken no enforcement action against the Congregation since 1995, when the Congregation began the contested use of the house. The Younises further argue that the lack of hardship is even clearer here than in Murphy, because in Murphy the City had issued a cease-and-desist order against plaintiffs, while here the City has taken no action against the Congregation. Younises' Br. at 7; but see Murphy, 402 F.3d at 351 (noting that the City lacked enforcement authority of the cease and desist order, and that "[c]laims of immediate injury are further suspect given that an appeal of the cease and desist order to the New Milford Zoning Board of Appeals automatically would have stayed its enforcement")

The Congregation counters by again noting that the Younises have already obtained a preliminary injunction in the state court action against the Congregation, and that they are seeking a permanent injunction on the basis that the Congregation did not obtain a CUP in 1996. Opp'n at 2. The Congregation argues that "[i]n effect, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O
JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

Younises contend that their own state court claim for per se nuisance based on the City's 1996 CUP denial is ripe for review and that it mandates permanent injunctive relief – but that the Congregation's RLUIPA claims arising from that very same denial cannot be adjudicated at this time." Opp'n at 2. The Congregation argues that "but for the City's 1996 CUP denial, the Congregation would not be laboring under the Younises' preliminary injunction, and it would not be threatened with imminent permanent injunctive relief without a forum for its RLUIPA claims." Opp'n to Younises' Br. at 7.

The Congregation also argues that if the Court dismisses this action, "the Congregation will have no adequate forum in which to timely adjudicate its RLUIPA claims arising form the City's 1996 demand for and denial of the CUP." Congregation's Br. at 15. The Congregation argues "[a]llowing the Younises to obtain injunctive relief on the basis of the City's 1996 denial of a CUP, without permitting the Congregation to adjudicate in this Court its first-filed RLUIPA claims undermines the very purpose of RLUIPA itself." Congregation's Br. at 15. Furthermore, "[d]ismissing the RLUIPA claims and forcing the Congregation to wait until the second CUP application is finally determined would effectively leave the Congregation with no remedy to defend against the Younises' state court action and permanent injunction order." Opp'n to Younises' Br. at 6. The Younises, however, counter that the Congregation is free to raise RLUIPA as a defense in the state court proceeding.[7] Younises' Opp'n at 4.

───────────────

[7] The Congregation also contends that the City is barred from making any arguments concerning ripeness, because the City never previously argued that the RLUIPA claims were unripe. Congregation Br. at 13. In addition, the Congregation argues that in settling the RLUIPA action and securing a full release of all RLUIPA claims, the City agreed not to contest this Court's jurisdiction through 2012. Id. The Congregation argues that because the settlement has now been rendered void, the City is estopped from taking an inconsistent position by trying to preclude a trial on the merits. Id. The City, however, counters that the fact that it argued that the Court lacks subject matter jurisdiction in its answer to the Congregation's SAC is tantamount to asserting that the Congregation's RLUIPA claim was unripe. Id. Furthermore, the Court notes that, even if the Congregation were correct that the City has not raised prudential ripeness, the Court may consider it on its own motion. See Reno v. Catholic Soc. Servs., 509 U.S. 43, 58, n.18 (1993) ("Even when a ripeness question in a particular case is prudential, we may raise it on our own motion, and cannot be bound by the wishes of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O
JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|----------|---------------------|------|-------------|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

c.      **Conclusion**

The Court concludes that the Congregation's RLUIPA claim is not prudentially ripe for judicial decision. Although the Court finds the instant action to be distinguishable in some ways from <u>Murphy</u>, 402 F.3d 342, given that the Congregation's 1996 CUP application was subject to a full administrative appeal, the considerations underlying prudential ripeness, as set forth in <u>Murphy</u>, counsel against finding this action fit for judicial decision. Over ten years have passed since the City denied plaintiff's CUP application, and the Congregation has recently filed a second application, which the City is currently considering. This second CUP application presents the first opportunity for the City to consider the Congregation's request in light of RLUIPA. The record before the Court is therefore incomplete, and it is difficult for the Court to determine the extent of the Congregation's injury without a final disposition of the second CUP application. Furthermore, withholding consideration of the Congregation's RLUIPA claim until the City reaches a final decision is warranted, given that the granting of the second CUP application would moot the instant action.

Furthermore, it does not appear that the Congregation will be immediately harmed by the Court's decision to dismiss the instant action on ripeness grounds. The City has not taken any action to date to enforce the original denial of the CUP. Furthermore, although there is an underlying state court action in which a permanent injunction could issue, no final determination has been made on the Younises' claim. Therefore, the threat of hardship to the Congregation remains speculative. However, the Court dismisses the instant action without prejudice, so as to permit the Congregation to refile its RLUIPA claim if the City denies the Congregation's second CUP application, or upon a more definite showing of hardship to the Congregation due to enforcement of the denial of the first CUP application.

**B.      Reconsideration of the Court's November 27, 2000 Order Re: Issue Preclusion**

The City also argues that the Congregation's claim is precluded by the December 3, 1999 decision of the California Court of Appeal in the Congregation's state court

---

parties").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

action.  This Court previously addressed the question of issue preclusion in its November 27, 2000 order.  In that order, the Court determined that while plaintiff's federal constitutional claims were precluded because they had been raised and rejected (in the form of state constitutional rights) in the parallel state court proceeding, plaintiff's RLUIPA claim was not precluded by the state court decision.  The City essentially argues here that the Court must reconsider its November 27, 2000 decision.

Local Rule 7-18 sets forth the bases upon which this Court may reconsider a previous order.  The Rule provides as follows:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise or reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.  No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

L.R. 7-18.  The City bases its motion for reconsideration on the basis that there has been a material change of law after the time of the decision.

In finding that the Congregation's constitutional claims were precluded, the Court's November 27, 2000 order held that "the state constitutional rights litigated in the state court proceedings are precisely the same as the federal constitutional rights sought to be litigated here (i.e. free exercise of religion, freedom of speech, freedom of association and assembly, and equal protection)."  However, the Court declined to extend its preclusion holding to the Congregation's RLUIPA claim.[8]

In so deciding, the Court noted first that an initial inquiry in a RLUIPA action is

---

[8] RLUIPA was passed subsequent to the California Court of Appeal decision, and therefore could not have been raised by the Congregation in the state court proceeding.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$\underset{\text{JS - 6}}{O}$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

whether there has been a "substantial burden on the religious exercise of a person." November 27, 2000 Order at 8 ("subsections A and B [on RLUIPA]. . . do not come into play unless there is first found a substantial burden on the religious exercise of a person."). The Court stated that, in the state court decision, "the phrase 'substantial burden' was not used; instead, the Court of Appeal analyzed the burden on religion in terms of location of the place of worship in relation to the residential zone, concluding that the burden on religion was 'minimal' (since there were nearby alternatives with proper zoning) comparing it to the 'compelling state interest' in the preservation of residential areas." Order at 9. The Court then compared the requirements of RLUIPA to the considerations raised in the state court proceeding, stating "it appears that [RLUIPA] has an entirely different focus. First, it classifies land use by a religious organization as a religious exercise. Second, it examines the effect of a local regulation on the 'religious exercise of any person'. . . . which is a different approach than examining the effect of a residential zone on a place of worship and comparing that regulation with the desirable application of residential zoning laws . . . .'" Because the state court and the underlying findings of the Zoning Appeals Board "did not refer at all to the religious exercise of persons (as comparing to institutions)" the Court found that the Congregation's RLUIPA claim was not precluded by issue preclusion and could go forward.

The City argues that the Court's holding should be reconsidered, because there have been significant developments in the interpretation of RLUIPA since 2000. Specifically, the City notes that in the Ninth Circuit's decision in Guru Nanak Sikh Society of Yuba City v. County of Sutter, 456 F.3d 978, 988 (9th Cir. 2006), the court held that the "Supreme Court's free exercise jurisprudence is instructive in defining a substantial burden under RLUIPA" and that, according to these precedents, a "substantial burden" must be such as to "place more than an inconvenience on religious exercise." City's Br. at 13; see also Westchester Day School v. Village of Mamaroneck, 417 F. Supp. 2d 477 (S.D.N.Y. 2006) ("RLUIPA purposely does not define 'substantial burden.' Congress intended that the term be interpreted by reference to Supreme Court jurisprudence, and that it not . . . be given any broader interpretation than the Supreme Court's articulation of the concept of substantial burden [on] religious exercise"); Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 760 (7th Cir. 2003) ("RLUIPA's legislative history indicates that it is to be interpreted by reference to RFRA and First Amendment jurisprudence . . .")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

$\overset{\text{O}}{JS-6}$

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

The City argues that in the state court action, the California Court of Appeal examined many federal and state free exercise cases, and concluded that the burden placed on plaintiff's religious exercise was minimal. City's Br. at 14, citing California Court of Appeal Decision at 15 ("the City's zoning law does not prohibit religious conduct per se. Rather, it precludes the conversion of a home – surrounded by other single-family homes – into an institutional use. The burdens imposed by [the City's] action are therefore of convenience and expense, requiring [the synagogue] to find another [location] . . . for worship . . . [Thus,] the burden on religious practice . . . is minimal'") (citations omitted). The City further argues that, contrary to the finding in this Court's November 2000 order, the California Court of Appeal emphasized the religious exercises of both institutions *and persons*. City's Br. at 14, citing California Court of Appeal Decision at 23 (Because evidence shows congregants could attend services if the synagogue relocates, "the *disabled congregants* will not be deprived of the opportunity to attend services") (emphasis added).

The Congregation responds with three arguments. First, the Congregation argues that this Court should not dismiss the RLUIPA claim on issue preclusion grounds without a noticed motion and full opportunity to respond, because a preemptive dismissal based on reconsideration of issues decided eight years ago without a noticed motion would violate Local Rule 7.18 (which governs motions for reconsideration) and due process. Opp'n at 7.

Second, the Congregation argues that the City's preclusion argument fails on the merits. Specifically, the Congregation argues that Congress intended to create a new standard of law with the passage of RLUIPA, and that the fact that the substantial burden test is to be defined by reference to pre-existing standards and Supreme Court precedent does not mean that the RLUIPA standard is identical to the standard employed in constitutional cases, or that Congress intended to limit the definition of "substantial burden" to pre-existing definitions. Opp'n to City at 8; citing Guru Nanak, 456 F.3d at 988 and n.11 (stating that the Supreme Court's "free exercise jurisprudence is *instructive* in defining a substantial burden under RLUIPA" and that several other circuits "*began* their task of defining substantial burden by referring" to free exercise jurisprudence) (emphasis added). In addition, the Congregation contends that the Ninth Circuit has never held that RLUIPA's substantial burden test is the same as that used in First Amendment cases, and has instead referenced dictionary definitions and has held that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|---|---|---|---|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

"for a land use regulation to impose a 'substantial burden,' it must be 'oppressive' to a 'significantly great' extent. That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise."  Opp'n to City at 9; see San Jose Christian, 360 F.3d at 1034 .

Furthermore, the Congregation argues that RLUIPA expanded the definition of "religious exercise" to provide that "the use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose."  42 U.S.C. § 2000cc-5(7)(B).  Prior to RLUIPA, the court would consider whether the "religious exercise implicated by zoning decisions was integral to a believer's faith."  Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1226 (11th Cir. 2004).  The Congregation argues that RLUIPA "changed the calculus fundamentally;" because "religious exercise" under RLUIPA is defined to include the right to practice religion *in a particular location*, and that religious exercise "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief;" therefore  the availability of alternative locations for worship is no cure if "an adherent's right to worship at a particular building is substantially burdened."  42 U.S.C. § 2222cc-5; Opp'n to City at 9; see Midrash Sephardi, Inc., 366 F.3d at 1225-26 ("RLUIPA obviates the need for [an] analysis [of whether the religious exercise implicated by the zoning decision was integral to the believer's faith] by providing a statutory definition of 'religious exercise'").

Third, the Congregation argues that even if the substantial burden claims under RLUIPA are precluded, the Congregation's SAC also includes alleged violations of RLUIPA's equal terms and non-discrimination provision, which would not be precluded by the state court's holding.  Id.  See 42 U.S.C. § 2000cc(b).

The Court finds that the City has failed to demonstrate that reconsideration of the Court's November 27, 2000 order is warranted.  The California Court of Appeal decision employed the constitutional balancing test, determining that the City had a strong interest in enforcing its zoning laws and that the City's zoning laws did not prohibit religious conduct per se, and therefore found that the burden on the Congregation was minimal. Court of Appeal Decision at 15.  While the analysis applied under RLUIPA may in some ways be similar, the Court does not find the case law to definitively establish that the analysis to be employed under RLUIPA is necessarily identical to the analysis employed by the Court of Appeal, so as to preclude litigation of the Congregation's RLUIPA's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 97-5042 CAS (Ex) | Date | May 5, 2009 |
|----------|---------------------|------|-------------|
| Title | CONGREGATION ETZ CHAIM; ET AL. v. CITY OF LOS ANGELES | | |

claim.  Furthermore, RLUIPA's definition of "religious exercise" to include "the use, building, or conversion of real property for the purpose of religious exercise" and to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" were clearly not before the California Court of Appeal in this case. Therefore, reconsideration of the Court's previous order is inappropriate.

## III.    CONCLUSION

For the foregoing reasons, the Court declines to reconsider its November 27, 2000 order.  However, the Court DISMISSES the instant action without prejudice on the ground that it is not prudentially ripe.

IT IS SO ORDERED

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |